No. 71,149

STATE OF KANSAS, *Appellee*, v. ROBERT S. WALTON, *Appellant*.

(885 P.2d 1255)

Opinion filed December 9, 1994.

*Stephen W. Kessler*, of Topeka, argued the cause and was on the brief for appellant.

*David B. Debenham*, assistant district attorney, argued the cause, and *Joan M. Hamilton*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: The defendant, Robert Sherman Walton appeals, contending that the trial court erred by refusing to allow him to withdraw his nolo contendere (no contest) plea. He also claims that the trial court abused its discretion in sentencing him. Finding no reversible error, we affirm.

The basis of the charges, according to the State, is that the defendant hired two others, Joe Johnson and Dominic Love, to kill his wife, Betty Walton. The gunman, Dominic Love, mistakenly killed Chang Kim instead of the defendant's wife. At a scheduled plea hearing, the State related to the court that the defendant would be pleading guilty to first-degree murder, conspiracy to commit first-degree murder, aggravated burglary, contributing to a child's misconduct or deprivation, unlawful discharge of a firearm at an occupied dwelling, and aggravated intimidation of a witness. In return, the State said it had agreed to drop the criminal solicitation charge and not seek the hard 40 sentence. The State and the defendant agreed to maximum consecutive sentences on the remaining counts.

On behalf of the defendant, counsel confirmed the plea agreement, with the exception that the defendant would be pleading no contest to the charges rather than guilty. After entering his plea of no contest and before sentencing, the defendant by letter and motion moved to withdraw his plea. The motion was denied. The trial court imposed the maximum sentence for each offense, to run consecutively. Additional facts necessary to resolve the questions raised are set forth below.

## WITHDRAWAL OF PLEA

The defendant advances two reasons in support of his contention that the court erred by refusing to allow him to withdraw his plea. First, he argues that the court violated the provisions of K.S.A. 22-3210(a)(2) because the court did not advise him of the maximum penalty provided by law which may be imposed upon the acceptance of the plea and because the court did not adequately advise him of the consequences of a no contest plea. Second, the defendant claims good cause for withdrawal was established because the defendant's girlfriend, Lisa Corbin, had made a videotaped statement prior to trial indicating that she and the defendant's son, Ralph Walton, had conspired to kill the defendant's wife and that the defendant was innocent. According to the defendant, he pled no contest only after being informed that Corbin would invoke her right not to testify at trial. The defendant

also claimed that he had an audiotape interview involving his son, Ralph Walton, wherein his son admitted plotting with Corbin to kill Betty Walton and completely exonerate the defendant.

Under K.S.A. 22-3210(d), a plea of guilty or nolo contendere may be withdrawn at any time before sentencing for good cause shown. The standard we apply when reviewing the decision of the trial court is one of abuse of discretion. See *State v. Harrison*, 231 Kan. 489, Syl. ¶ 1, 646 P.2d 493 (1982). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable; that is, when no reasonable person would take the view adopted by the trial court. *State v. Reed*, 248 Kan. 506, 512, 809 P.2d 553 (1991).

K.S.A. 22-3210 sets forth the conditions which must be met before a court accepts a plea of guilty or nolo contendere. The defendant raises no questions concerning any requirement under K.S.A. 22-3210 except the two referenced above, *viz*, that the court did not advise him of the maximum possible sentence and that he did not understand the consequences of his no contest plea. K.S.A. 22-3210(a)(2).

The following quotations from the record address both of the defendant's contentions:

"THE COURT: Have there been plea negotiations?

"MRS. HAMILTON: Yes, Your Honor, and I will explain them to the Court. First of all, the State would move to dismiss Count No. 5 on the complaint. That's the criminal solicitation. This has been discussed and it was going to be dismissed prior to the jury trial as duplicitous anyway, so we would move to dismiss that. In regard to the other six remaining counts, I understand that in exchange for the State not seeking the hard 40 for this defendant, that the defendant will be pleading guilty as charged to Counts Numbers, 1, 2, 3, 4, 6 and 7. The State will also be requesting the maximum sentences on each of those counts and asking that they run consecutive with each other. The defendant has agreed to those consecutive counts and maximum sentences.

"So it's clear and understanding to the defendant as to what he is agreeing to, that would be 15 years before eligibility on a life sentence. On Count 2, it would be 2.5 years before parole eligibility. On Count 3, aggravated burglary, the maximum would be five to 20 years, parole eligibility would be two and a half years. On Count 4, contributing to the delinquency of a minor, it would be one to five, six months before parole eligibility. On Count 6, unlawful possession of a firearm, it would be three to 10, parole eligibility of one and a half

years. On Count 7, the maximum is one to five, six months before parole eligibility. That would make it a total of twenty-two and a half years before parole eligibility. That is if the Court would take the recommendations of the State and also the agreement of the defendant.

"I have discussed these issues with the victim's family—well, the victim's family is in Korea, Your Honor, and so we have not been able to discuss it specifically with the victim's family, but with the family that is in Kansas, the brother-in-law is the only one who speaks English, and he is related to the other family members. They are in agreement with this negotiation. .

"MR. WURTZ: Your Honor, with the exception of the State's statement that he would be pleading guilty, which he prefers—in fact, has to, plead no contest, the agreement has been correctly stated. We're prepared to tender a voluntary plea of nolo contendere or no contest. He is willing to plead guilty to Counts 6 and 7, the ones related to the August 23rd incident, aggravated intimidation of a witness and unlawful discharge. But the ones relating to the murder itself, he must plead nolo contendere.

"THE COURT: All right. Mr. Walton, would you come forward, please? You are Robert Sherman Walton?

"DEFENDANT WALTON: Yes.

"THE COURT: How old are you?

"DEFENDANT WALTON: Forty-nine.

"THE COURT: You are here with Mr. Ron Wurtz, the District Public Defender. Have you had enough time to discuss this case with him?

"DEFENDANT WALTON: Yes.

"THE COURT: Are you satisfied with his services?

"DEFENDANT WALTON: Yes, I am.

"THE COURT: You have heard the statements of counsel concerning plea negotiations. Does that agree with your understanding of the plea negotiations?

"DEFENDANT WALTON: Yes.

"THE COURT: Other than the plea negotiations, have there been any threats or promises made in order to induce you to enter this plea?

"DEFENDANT WALTON: No.

"THE COURT: Do you understand that in Count 1 you are charged with murder in the first degree; Count 2, conspiracy to commit murder in the first degree; Count 3, aggravated burglary; Count 4, contributing to a child's misconduct or deprivation; Count 5,—Count 5 was dismissed; Count 6 is unlawful discharge of a firearm in an occupied dwelling; Count 7 is aggravated intimidation of a witness. Do you understand the charges?

"DEFENDANT WALTON: Yes, sir, I do, yes.

"THE COURT: And will you waive formal reading of the charges, Mr. Wurtz?

"MR. WURTZ: Yes, sir.

"THE COURT: Do you understand the possible penalties in the charges?

"DEFENDANT WALTON: Yes.

"THE COURT: The District Attorney has already recited the possible penalties. Does that agree with your understanding of the penalties?

"DEFENDANT WALTON: Uh-huh.

"THE COURT: Your answer is yes?

"DEFENDANT WALTON: Yes."

. . . .

"THE COURT: Is there any question in your mind about what you are being accused of doing in this case, Mr. Walton?

"DEFENDANT WALTON: No, sir.

"THE COURT: Are you presently under the influence of any alcohol or any other drugs?

"DEFENDANT WALTON: No.

"THE COURT: Any reason that you know of why you should not enter a plea in this case?

"DEFENDANT WALTON: No, sir.

"THE COURT: Very well, the Court finds that the defendant is competent to enter this plea, that his plea is informed and voluntary, and that there is a factual basis for this plea. I will now ask you, sir, how do you plead to the charge of murder in the first degree as charged in Count 1?

"DEFENDANT WALTON: No contest.

"THE COURT: Do you understand that by entering that plea, while technically you are not admitting guilt, the Court would look upon it in the same light of a plea of guilty?

"DEFENDANT WALTON: No.

"MR. WURTZ: (To defendant Walton) Remember that I said that if you plead no contest the result would be the same as if you pled guilty?

"DEFENDANT WALTON: Oh, yeah.

"MR. WURTZ: You don't have to admit some of the facts, you—

"DEFENDANT WALTON: Yeah, I understand.

"THE COURT: Do you understand that?

"DEFENDANT WALTON: Yes, sir."

We have held that failure to strictly comply with the explicit requirements of K.S.A. 22-3210 is harmless error if, upon review of the entire record, it can be determined that the pleas were knowingly and voluntarily made. *Noble v. State*, 240 Kan. 162, 164, 727 P.2d 473 (1986). Recently, in *State v. Morris*, 254 Kan. 993, 1002, 869 P.2d 739 (1994), we found compliance with K.S.A. 22-3210(a)(2) where the State voiced on the record the maximum sentence that could be imposed and the court confirmed on the record that the defendant understood.

The defendant attempts to distinguish *Morris* on the basis that the defendant's plea was guilty instead of no contest. The de-

fendant argues that he did not realize his pleas of no contest would carry the same penalties as guilty pleas. However, the record reflects otherwise. The defendant originally stated that he did not understand but after conferring with his counsel stated that he did understand that the penalties would be the same.

Finally, the court conducted a full hearing on the defendant's allegations that other evidence discovered after entry of his plea exonerated him, thus providing good cause for granting the motion to withdraw. He bases part of his argument on an audiotape interview of Ralph Walton and a videotaped statement of Lisa Corbin. The tapes are not a part of the record on appeal.

The trial court considered all evidence, including the videotaped statement of Lisa Corbin, the testimony and audiotape interview of Ralph Walton, and the testimony of the defendant. The court concluded that the defendant's plea was informed and voluntary. The court further stated that the Corbin videotape was no basis for withdrawing the plea and that the audiotape of Ralph Walton was not exculpatory. We have reviewed the record and conclude that the trial court's findings are supported by substantial competent evidence.

As a final consideration, the defendant asks us to adopt a test used by the 10th Circuit Court of Appeals in *U.S. v. Elias*, 937 F.2d 1514, 1520 (10th Cir. 1991), to determine whether a defendant should be allowed to withdraw his or her plea. *Elias* sets forth seven factors which the court must consider in determining whether to grant a defendant's motion to withdraw his or her plea. We have considered *Elias* and note that our law in Kansas incorporates some of the factors listed in *Elias*. We, however, reject the *Elias* test in favor of the well-established Kansas law for resolution of the issue.

## SENTENCE

The defendant contends that the court did not properly consider his individual needs under K.S.A. 21-4601 and did not adequately consider the sentencing factors under K.S.A. 1993 Supp. 21-4606 when imposing sentence. The standard which we apply in addressing these questions is whether the court abused its discretion in the sentencing phase of trial.

"K.S.A. [1993 Supp.] 21-4606[b] sets forth seven factors which, while not controlling, are to be considered by the court in fixing the minimum term of imprisonment which is consistent with the public safety, the needs of the defendant, and the seriousness of the defendant's crime." *State v. McDonald*, 250 Kan. 73, 82, 824 P.2d 941 (1992). "The district court must consider the sentencing factors set forth in K.S.A. [1993 Supp.] 21-4606[b] when exercising its discretion in sentencing a defendant in excess of the minimum term for the offense." *State v. Crawford*, 250 Kan. 174, 176, 824 P.2d 951 (1992). However, failure to do so does not always constitute abuse of discretion; each case should be decided on its own facts. *State v. Richard*, 252 Kan. 872, 881, 850 P.2d 844 (1993).

K.S.A. 21-4601 sets forth the sentencing objectives of the corrections system. The sentencing court is not required to specifically consider those objectives as it must the sentencing factors in 21-4606. *State v. Webb*, 242 Kan. 519, 530, 748 P.2d 875 (1988).

The defendant argues that the district court failed to consider both K.S.A. 21-4601 and the factors in K.S.A. 1993 Supp. 21-4606(b). However, the court did state that it was taking into account both K.S.A. 21-4601 and K.S.A. 1993 Supp. 21-4606. Our review indicates that the court did in fact consider the sentencing factors. The court stated that it was taking into consideration that the defendant had an extensive criminal history, was the primary instigator, caused irreparable harm, and had no justification for his actions. Furthermore, the court found that the victim had no part in instigating the crime.

Finally, the court stated that it had considered the presentence investigation report, which substantially addressed the sentencing factors. A sentencing court may be found to have complied with K.S.A. 1993 Supp. 21-4606 when it incorporates into the record a presentence investigation report which addresses the sentencing factors. *State v. Webb*, 242 Kan. 519, Syl. ¶ 2. The defendant's claim that the court abused its discretion fails because the record demonstrates that the court expressly and implicitly considered the sentencing factors listed in 21-4606. Moreover, the court con-

sidered a presentence investigation report incorporating the sentencing factors.

Affirmed.